IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAUL WARD HANSEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:18-CV-00538-K |
| | § | |
| CITY OF WEST LAKE TAWAKONI, et al., | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is a Rule 12(c) Motion for Judgment on the Pleadings (ECF No. 12) filed by Defendants the City of West Lake Tawakoni (the "City") and Brandon Kilpatrick ("Kilpatrick"), individually and in his official capacity as West Lake Tawakoni Police Department's Chief of Police, asking the Court to dismiss Plaintiff Paul Hansen's claims in this 42 U.S.C. § 1983 action. For the reasons stated, the District Court should GRANT Defendants' Motion and DISMISS Plaintiff's claims with prejudice.

**Background**

This dispute began as a disagreement over the property line between Plaintiff's property and his neighbors Wayne and Carrie Anderson's property in West Lake Tawakoni, a Hunt County, Texas municipality. Compl. 2, 4 (ECF No. 1). Plaintiff complained to the City's Code Compliance department several times

1

before eventually reaching out to Kilpatrick, the City's Police Chief. *Id.* 4. Plaintiff alleges Kilpatrick informed him that he could not assist Plaintiff in resolving the dispute with his neighbors because it was not a criminal matter. *Id.*

One particular point of contention between Plaintiff and the Andersons involved removing a live oak tree, with Plaintiff's privacy-fence panels bolted to it, on the property line. *Id.* 5. But beyond the oak tree, the neighbors' dispute involved several incidents of a scatological nature, where "Plaintiff discovered litterbox shavings and feces on his property," and each time an incident occurred, Plaintiff maintains that he contacted either Kilpatrick or the City to report it. *Id.* Kilpatrick allegedly became actively involved in the oak-tree dispute and authorized the Andersons to remove the tree. *Id.* Defendants, however, deny that Kilpatrick was personally involved in the dispute or authorized removal of the tree. Answer 4 (ECF No. 9).

On May 31, 2015, Plaintiff allegedly discovered an inoperable toilet on his property that "contained fresh feces." Compl. 5. "Due to noxious odors emanating from the toilet," Plaintiff removed it from his property. *Id.* Defendants, however, maintain that they received a report of a toilet being placed on the Andersons' property and that their investigation revealed it was not filled with feces—fresh or otherwise. Answer 4-5. Defendants contend that Plaintiff moved and destroyed the toilet, providing grounds for his arrest. *Id.* 5; Defs.' Ex. 1 (ECF No. 9-1).

Accordingly, on March 7, 2016, Kilpatrick, together with two other officers, arrested Plaintiff at his residence for criminal mischief and trespass. Compl. 6.

Plaintiff alleges that the capias warrant issued for his arrest was based on the February 29, 2016 criminal complaint that included Kilpatrick's personal observations. *Id.* For their part, Defendants assert that the warrant was properly based on the officer's report. Answer 5.

While at the Hunt County Detention Center, Plaintiff alleges Hunt County jailers deprived him of his medication for diabetes and other severe circulatory and arterial diseases; that he was falsely imprisoned for two full days; and that he was incarcerated for more than 24 hours before being permitted to appear before a magistrate. Compl. 6-7. After Plaintiff posted bond and hired an attorney, on August 8, 2016, the Hunt County District Attorney dismissed all charges against Plaintiff "due to insufficient evidence." *Id.* 7. Plaintiff alleges that he would not have been arrested but for false assertions contained within the criminal complaint. *Id.*

Plaintiff filed a Complaint in federal court on March 7, 2018, alleging that Kilpatrick, the City, and other unnamed West Lake Tawakoni police officers and Hunt County jailers violated his civil rights by wrongfully arresting and incarcerating him, negligently hiring officers, and conspiring to deprive him of his constitutional rights. Compl. 1-2, 7-11. Specifically, Plaintiff asserts claims against Kilpatrick and the unnamed police officers under 42 U.S.C. § 1983 for false imprisonment and conspiracy in violation of his Fourth, Eighth, and Fourteenth Amendment rights, as well as claims under state law for intentional infliction of emotional distress. *Id.* 7-8, 10. He further asserts claims under § 1983 against the

3

City for negligently hiring Kilpatrick and the unnamed police officers, and against the unnamed Hunt County jailers for deliberate indifference to his serious medical needs. *Id.* 7, 9-10. The City and Kilpatrick timely filed an Answer, and later filed their Rule 12(c) Motion for Judgment on the Pleadings.[1] By their motion, Defendants argue that Plaintiff's Eighth Amendment, Fourth Amendment, § 1983 conspiracy, intentional infliction of emotional distress, and municipal liability claims should be dismissed because he has not alleged sufficient facts to support any of his claims. Plaintiff failed to respond to Defendants' Motion, and the time to respond has expired. Accordingly, the Court considers the motion without the benefit of a response.

## Legal Standard

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (citations omitted). "The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6)." *Johnson-Williams v. CitiMortgage, Inc.*, 2018 WL 1156100, at *6 (N.D. Tex. Jan. 31, 2018) (citing *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007); *Hoffman v. L & M Arts*, 2011 WL

---

[1] Plaintiff has not served any of the unnamed police officers or Hunt County jailers.

4

3567419, at *4 (N.D. Tex. Aug. 15, 2011)), *adopted by* 2018 WL 1122230 (N.D. Tex. Feb. 28, 2018), *aff'd*, 2018 WL 4523159 (5th Cir. Sept. 20, 2018); *see also Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010).

When deciding a 12(b)(6) motion for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks and citation omitted). To survive Defendants' Rule 12(c) Motion for Judgment on the Pleadings, therefore, Plaintiff's Complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the Complaint has stopped short of showing that Plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

## Analysis

"Section 1983 creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Colson v. Grohman,* 174 F.3d 498, 504 n. 2 (5th Cir.1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 82 (1984)). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)).

### I. Plaintiff's Claims Against Defendant Kilpatrick

Plaintiff asserts claims against Defendant Kilpatrick under § 1983 for violations of his Eighth Amendment and Fourth Amendment rights and for

6

conspiracy. He also asserts a state-law claim for intentional infliction of emotional distress. The Court first addresses Plaintiff's federal claims.

## A. Eighth Amendment

The Court should dismiss Plaintiff's claim against Defendant Kilpatrick for violation of his Eighth Amendment rights because Plaintiff was not a post-conviction detainee at the time of the events giving rise to this lawsuit. "The protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners and do not apply to pretrial detainees . . . ." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) (citing *Ingraham v. Wright,* 430 U.S. 651, 671, n.40 (1977); *Bell v. Wolfish,* 441 U.S. 520, 535, n.16 (1979)); *see also Thibodeaux v. Bordelon*, 740 F.2d 329, 334 (5th Cir. 1984) ("Because Thibodeaux was a pretrial detainee at the time of the alleged injury, he cannot state a cause of action under the eighth amendment."); *Abdeljalil v. City of Fort Worth*, 55 F. Supp. 2d 614, 626 (N.D. Tex. 1999), *aff'd sub nom., Abdeljalil ex rel. Walker v. City of Fort Worth*, 234 F.3d 28 (5th Cir. 2000) (dismissing plaintiffs' Eighth Amendment claims because they were not incarcerated at the time of the events giving rise to the present lawsuit). In his Complaint, Plaintiff alleges that "Defendants Kilpatrick, John Doe #1 and John Doe #2 are liable to Plaintiff for their violations of the Fourth and Eighth Amendments of the United States Constitution." Compl. 8 ¶ 40. Plaintiff also states, however, that "the Hunt County Court dismissed all charges against Plaintiff, due to insufficient evidence." Compl. 7 ¶ 33. Because Plaintiff was never convicted, he cannot assert a claim for violation of his Eighth

7

Amendment rights. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Kilpatrick fails as a matter of law, and the District Court should dismiss it.

### B. Fourth Amendment

Plaintiff's Fourth Amendment, false-imprisonment claim against Defendant Kilpatrick also fails because Kilpatrick arrested Plaintiff pursuant to a lawful warrant. With respect to warrants, the United States Supreme Court has held that "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)); *see also De Angelis v. City of El Paso*, 265 F. App'x 390, 396 (5th Cir. 2008) (per curiam) (footnote omitted) ("When reviewing a warrant's issuance, we defer to the magistrate's determination of probable cause."). In his Complaint, Plaintiff alleges that "Defendants Kilpatrick, John Doe #1 and John Doe #2 were acting under the color of law when they deprived Plaintiff of his constitutional right to be free from false imprisonment," and that "such wrongful arrest was done in violation of Plaintiff's rights under the Fourth Amendment of the United States Constitution." Compl. 8 ¶ 36-37. Plaintiff acknowledges, however, that a warrant for his arrest existed, and Defendants attached a copy of the warrant as an exhibit to their Answer. Defs.' Ex. 1; *see* Compl. 6 ¶ 25. Though Plaintiff contends "the basis for the warrant . . . was Defendant Kilpatrick's personal observation," he fails to allege any facts challenging the warrant's legality. *Id*. Thus, because Plaintiff was arrested pursuant to a lawful

8

warrant, his Fourth Amendment claim for unlawful arrest should also be dismissed.

### C. § 1983 Conspiracy

Plaintiff's § 1983 conspiracy claim against Kilpatrick should also be dismissed because Plaintiff does not plead sufficient facts to support his claim. To succeed on a conspiracy claim under § 1983, a plaintiff must establish "(i) that the defendants agreed to commit actions that violated a plaintiff's constitutional rights, and (ii) that at least one of the defendants was a state actor." *Lewis v. Law-Yone*, 813 F. Supp. 1247, 1256 (N.D. Tex. 1993) (internal citation omitted); *see also Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds as recognized by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992) ("In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."). Bald allegations that a conspiracy exists, unsupported by the operative facts upon which a plaintiff's claim is based, are insufficient to state a claim. *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987) (footnote omitted). Here, Plaintiff cursorily alleges that "Defendants Kilpatrick, John Doe #1 and John Doe #2 acted in concert by restraining Plaintiff of his liberty without legal justification" and "entered into a conspiracy to deprive Plaintiff of his right to be free from illegal seizure of his person." Compl. 8 ¶ 40. He further states that "the conspiracies involved state action, as Defendants acted under color of the statutes,

9

customs, ordinances, and usage of the State of Texas and the City of West Lake Tawakoni," and that Plaintiff suffered injury as a result of the conspiracy. *Id.* 8 ¶ 41-42. Plaintiff does not plead the operative facts to support his claim that a conspiracy existed. Because Plaintiff's "'[m]ere conclusory allegations of conspiracy cannot, absent reference to material facts' state a substantial claim of federal conspiracy under 42 U.S.C. § 1983,'" the Court should dismiss his conspiracy claim against Kilpatrick. *Schinzing v. City of Cleburne*, 2001 WL 210483, at *2 n.3 (N.D. Tex. Feb. 28, 2001) (quoting *Hale v. Harney,* 786 F.2d 688, 690 (5th Cir. 1986)); *accord Blakely v. Andrade*, 2019 WL 317771, at *1 (N.D. Tex. Jan. 23, 2019).

### D. Intentional Infliction of Emotional Distress

Last, Plaintiff's state-law intentional infliction of emotional distress claim against Kilpatrick fails because he is immune under Texas law. The election-of-remedies provision of the Texas Tort Claims Act provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

10

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f); *see also Marino v. Lenoir*, 526 S.W.3d 403, 405 (Tex. 2017) (construing § 101.106(f)). "Although § 101.106(f) is a state statute, it can be raised in federal court as a defense to alleged violations of Texas tort law." *Davidson v. AT&T Mobility, LLC*, 2019 WL 486170, at *9 (N.D. Tex. Feb. 7, 2019) (citing *Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 158-62 (5th Cir. 2017)). "[A] defendant is entitled to dismissal under section 101.106(f) upon proof that the plaintiff's suit (1) was based on conduct within the general scope of the defendant's employment with a governmental unit and (2) could have been brought against the government unit under the [Texas] Tort Claims Act." *Anderson v. Bessman*, 365 S.W.3d 119, 124 (Tex. App.—Houston [1st. Dist] 2011, no pet.) (citations omitted). The test's first component involves two inquiries: "whether the individual defendant was an employee of a governmental unit and whether the acts alleged fall within the scope of that employment at the relevant time." *Id.* (citing *Poland v. Willerson*, 2008 WL 660334, at *4 (Tex. App.—Houston [1st Dist.] Mar. 13, 2008, pet. denied); *Turner v. Zellers*, 232 S.W.3d 414, 417 (Tex. App.—Dallas 2007, no pet.)). The Texas Tort Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by a competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5). With respect to the test's second component, the Texas Supreme Court has held that "'all [common-law] tort theories alleged against a governmental unit . . . are assumed to be "under [the Tort Claims Act]" for the

11

purposes of section 101.106.'" *Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011) (brackets in original) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008)). In fact, the Texas Supreme Court held that "for section 101.106(f), suit 'could [be] brought' under the Act against the government regardless of whether the [Texas Tort Claims] Act waives immunity from suit." *Id.* at 385.

Plaintiff's intentional infliction of emotional distress claim fails to satisfy either component of the § 101.106(f) test. First, Plaintiff does not allege any facts that would challenge Kilpatrick's status as an employee of a governmental unit or whether he was acting in the scope of his employment when executing the warrant ordering Plaintiff's arrest. *See* Compl. 6 ¶ 24-25; Def.'s Ex. 1. Here, Plaintiff restyles his § 1983 claims as a state-law intentional infliction of emotional distress claim. He alleges that "Defendants Kilpatrick, John Doe #1, John Doe #2 and Hunt County Jailers acted intentionally and, in the alternative, recklessly when they arrested and detained him without providing his necessary and vital medications," and "kept him incarcerated in excess of twenty-four hours before affording him the opportunity to make contact with another individual." Compl. 10 ¶ 55-56. Plaintiff maintains that he suffered emotional injury as a result. *Id.* 10 ¶ 58-59. Plaintiff does not dispute that Kilpatrick was an employee of a governmental unit or that he acted within the scope of his employment when executing the warrant and arresting Plaintiff.

Second, the Court concludes that Plaintiff's state-law claim for intentional infliction of emotional distress could have been brought against the City under the Texas Tort Claims Act for the purposes of § 101.106(f) because it is a common-law tort claim. *See Franka*, 332 S.W.3d at 369; *see also Davidson*, 2019 WL 486170, at *10 ("The Texas courts of appeals have repeatedly and expressly held that claims for intentional torts 'could have been brought . . . against the governmental unit' for the purposes of § 101.106(f), even though the TTCA does not waive immunity for such claims. The Supreme Court of Texas has impliedly held the same." (citing *Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014); *Zavala v. Bustos*, 2018 WL 3764568, at *3 (Tex. App.—Corpus Christi Aug. 9, 2018, no pet.); *McFadden v. Olesky*, 517 S.W.3d 287, 298-99 (Tex. App.—Austin 2017, pet. denied); *City of Dallas v. Groden*, 2016 WL 1367380, at *7 (Tex. App.—Dallas Apr. 6, 2016, pet. denied); *Lopez v. Serna*, 414 S.W.3d 890, 895 (Tex. App.—San Antonio 2013, no pet.)). Thus, because the Court concludes that Defendant Kilpatrick is immune under Texas law from Plaintiff's state-law claim for intentional infliction of emotional distress, the District Court should dismiss it.

## II. Plaintiff's Claims Against the City of West Lake Tawakoni

Plaintiff also asserts claims under § 1983 for municipal liability against the City on grounds of negligent hiring and "ratification."

### A. Municipal Liability

Plaintiff's claims against the City fail because, as a municipality, it is not vicariously liable under 42 U.S.C. § 1983 for the allegedly unconstitutional acts of

its employees. While § 1983 claims may be brought against municipalities "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," municipalities cannot be held liable solely for employing a tortfeasor; that is, they "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). To establish a claim for municipal liability under § 1983, "a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell,* 436 U.S. at 691). "A plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.'" *Id.* at 541-42. (citing *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002)). "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001) (citing *Bennett v. City of Slidell,* 728 F.2d 762, 768 n.3 (5th Cir. 1984), *cert. denied,* 472 U.S. 1016 (1985); *McKee v. City of Rockwall,* 877 F.2d 409, 415 (5th Cir. 1989), *cert. denied,* 493 U.S. 1023 (1990)) (footnote omitted). A plaintiff can prove that an official policy exists by offering proof of:

> (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city

> officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents a municipal policy.

*Burge v. Saint Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003) (quoting *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)); *see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.") (citations omitted). With respect to the second prong, the policymaker possessing actual or constructive knowledge must have "the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988); *Valle*, 613 F.3d at 542. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (footnote omitted). Last, under the third prong, a plaintiff must establish that "the municipal action was taken with the requisite degree of culpability and . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 404.

Here, Plaintiff asserts § 1983 claims against the City based on, what the Court construes as, negligent hiring and "ratification" theories. Compl. 8-9 ¶ 43-

15

46. To assert a negligent hiring claim under § 1983 against a municipality, a Plaintiff must show that "(1) the . . . hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring . . . policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996) (citing *City of Canton v. Harris,* 489 U.S. 378, 385-87 (1989); *Benavides v. Cty. of Wilson,* 955 F.2d 968, 972 (5th Cir. 1992)). The Supreme Court has made clear that "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 411. Plaintiff asserts that the City hired Defendant Kilpatrick and that he was not qualified to be a Texas peace officer. Compl. 9 ¶ 44. Plaintiff further alleges that the City "directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants Kilpatrick, John Doe #1 and John Doe #2." *Id*. 9 ¶ 45. And that "[a]s a direct cause and result of the Constitutional violations by the City of West Lake Tawakoni . . . Plaintiff incurred extreme pain and injuries for which he seeks compensation." *Id*. 9 ¶ 46. Plaintiff does not plead any facts regarding the City's hiring procedures, indicating that the City was deliberately indifferent in adopting its hiring procedures, or suggesting that the allegedly

offending policies directly caused his injury. Thus, Plaintiff fails to sufficiently plead a negligent-hiring claim under § 1983 against the City.

To the extent that Plaintiff's allegation that City "approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants" constitutes a separate ground for municipal liability, it also fails. Plaintiff does not allege any facts indicating a specific policy or custom and its relationship to Defendants' alleged constitutional violation. Because "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts," and the City cannot be held liable simply via respondeat superior, Plaintiff fails to state a municipal-liability claim against the City. *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)). Accordingly, the District Court should dismiss Plaintiff's § 1983 claims against the City.

## Recommendation

For the reasons stated, the District Court should GRANT Defendants' Motion for Judgment on the Pleadings (ECF No. 12) and DISMISS Plaintiff's claims against them with prejudice.

**SO RECOMMENDED.**

February 22, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).